J-S62001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.J.M.E.-F., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.E., FATHER | : : : : : : : | |
| | : | No. 1811 EDA 2018 |

Appeal from the Order Entered May 30, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000226-2018,
CP-51-DP-0002580-2016

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 22, 2018**

S.E. (Father) appeals from the order, entered in the Court of Common Pleas of Philadelphia County, involuntarily terminating his parental rights to his minor son, E.J.M.E.-F. (Child) (born 7/2016).  After careful review, we affirm based on the trial court's opinion.

The Philadelphia Department of Human Services (DHS) received a report in July 2016 that Child had been born prematurely at 32-weeks' gestation and tested positive for benzodiazepine and opiates.[1]  On August 16, 2016, Child was discharged from the neonatal intensive care unit of Temple University Hospital and, by Mother's agreement and DHS' approval,[2] placed in

---

[1] Mother, who is not a party to this appeal, also tested positive for benzodiazepines and opiates at Child's delivery and during her prenatal visits.

[2] DHS visited J.F.'s home and found it appropriate.  DHS also completed all necessary background checks also completed with respect to J.T.

the home of J.F., a family friend. On September 22, 2016, a case plan was prepared for Father with the following objectives: maintain attendance at family school/counseling, undergo drug testing, and ensure Child's needs were met. On October 7, 2016, the court granted J.F. primary physical and sole legal custody of Child; Father was given supervised physical custody at J.F.'s residence. Four months later, the court granted Father supervised visits with Child twice a week at DHS. On November 30, 2016, Child was adjudicated dependent and legal custody was transferred to the Department of Human Services. Child remained in kinship care with J.F.

In August 2017, Father was deemed "minimally compliant" with his attendance at family school. In October 2017, Father was discharged from family school for noncompliance and lack of participation; at a permanency hearing, Father was found to be minimally compliant with his permanency plan. In January 2018, the court ordered Father to re-engage in parenting classes or family school.

On March 22, 2018, DHS filed a petition to involuntarily terminate Father's parental rights. The court held a termination hearing on May 30, 2018, after which the court entered an order granting termination on the bases of sections 2511(a)(1), (a)(2) & (b) of the Adoption Act.[3] Father filed

---

[3] 23 Pa.C.S. §§ 2101-2910.

a timely notice of appeal and presents the following issues for our consideration:

> (1) Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, S.E.[,] pursuant to 23 Pa.C.S.A. [§] 2511(a)(1)[,] where [F]ather presented evidence that he substantially met his FSP goals and tried to perform his parental duties.
>
> (2) Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, S.E.[,] pursuant to 23 Pa.C.S.A. [§] 2511(a)(2)[,] where [F]ather presented evidence that he remedied his situation by participating in family school and taking parenting classes. Father has the present capacity to care for his child.
>
> (3) Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather, S.E.[,] pursuant [§] 2511(b)[,] where evidence was presented that established the child had a parental bond with his father and [F]ather visited regularly with his son in order to maintain that bond.

Appellant's Brief, at 7.

Before we review the substantive issues presented by Father on appeal, we must first address a procedural question. In **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), our Supreme Court recently held:

> [I]n future cases Rule 341(a) will, in accordance with it Official Note, require that when a **single order resolves issues arising on more than one lower court docket**, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal.

- 3 -

*Id.* at 977 (emphasis added).[4] Here, the order from which Father appeals was entered on May 30, 2018, and lists two docket numbers, one from the dependency (goal change) matter and the other from the adoption (termination) matter.[5] However, the order solely resolves the issue regarding the termination of Father's parental rights to Child pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), & (b). **See** Decree of Involuntary Termination of Parental Rights, 5/30/18 at 2. As part of the termination process, the order also permits the adoption of Child to proceed without Father's consent and transfers custody of Child to DHS. **Id.** at 2. The order does not resolve any issues with regard to dependency and, notably, the docket number listed on the May 30, 2018 order only references the Adoption Docket, CP-51-AP-0000226-2018.[6] Therefore, because the order does not resolve issues arising from anything but the lower court's adoption docket, i.e., issues relating to terminating parental rights, **Walker** is not controlling and we need not quash the appeal.

_____

[4] **Walker** was filed on June 1, 2018; Father's notice of appeal was filed twelve days later, on June 13, 2018.

[5] Although Father included both adoption and dependency docket numbers on his singular notice of appeal, he does not raise any issue with regard to the dependency matter in his appellate brief.

[6] While the record contains a permanency review order also dated May 30, 2018, Father is not appealing from or contesting anything having to do with that dependency matter.

In his first two issues, Father contends that the trial court improperly terminated his parental rights under 23 Pa.C.S. §§ 2511(a)(1) and (a)(2).[7]

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under

---

[7] Pursuant to sections 2511(a)(1) and (a)(2), a parent's rights to a child may be terminated after a petition is filed on the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. §§ 2511(a)(1), (2).

23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.*

Instantly, Community Umbrella Agency case manager, Jasmine Segarra, testified at the termination hearing that Child has been in kinship care with J.F. his entire life and that J.F. is a pre-adoptive resource. N.T. Termination Hearing, 5/30/18, at 14. She also testified she visited Child at J.F.'s home three weeks before the termination hearing, where Child was safe and his needs were being met. *Id.* at 12. Child calls J.F. mom, cries when she walks away from him, and is only able to be calmed down by J.F. *Id.* at 15. Ms. Segarra testified that it would be in Child's best interest if he were adopted by J.F. and that Child would not suffer any irreparable harm if Father's parental rights were terminated. *Id.* Child's connection with Father is minimal; however, Father had only missed one visit with Child since the beginning of 2018. *Id.* at 15-16. At the end of visits with Father, Child did not have any trouble separating from him. *Id.* at 17.

At the time of the termination hearing, Father had not completed either family school or parenting courses, both of which were service plan objectives. *Id.* Father also did not have safe and appropriate housing for Child. Among several issues, Father's home did not have hot water or a railing for the

- 6 -

stairwell. *Id.* at 24. Although Father was attending parenting classes and participating in other services at the time of the termination hearing, he had only begun those classes two months before the hearing and just days before DHS filed the termination petition. *Id.* at 18. Father was unemployed at the time of the hearing; social security disability payments[8] are Father's sole source of income. *Id.*

Father also testified at the termination hearing. He testified that since the CUA case manager visited his home, he had had the stairway railing fixed. He admitted that, because the home still has plumbing issues and holes in the ceiling, it is not appropriate for Child. *Id.* at 30. Father testified that caseworkers failed to re-refer him to family school or reinstate him after he was discharged from that program. *Id.* at 27-28. The court, however, discredited Father's testimony on that point, stating that "the record does not support that," *id.* at 36, and finding that "the issue of credibility is resolved in favor of the case worker." *Id.* at 37.

After a careful consideration of the record, the briefs on appeal and the relevant case law, we agree with the trial court that DHS presented clear and convincing evidence to terminate Father's parental rights under sections 2511(a) and (b). We rely upon the trial court opinion, authored by the Honorable Allan L. Tereshko, to affirm the order terminating Father's parental rights. *See* Trial Court Opinion, 7/18/18, at 15-16 (termination proper under

_____

[8] Father testified that his disability is due to his weight issue. N.T. Termination Hearing, 5/20/18, at 30-31.

- 7 -

section 2511(a)(1), (a)(2), and (b) where caseworker credibly testified: Father failed to perform parental duties and was unable to remedy condition(s) leading to Child's placement; Father did not complete plan goals; Father is not employed; Father has not verified his income; Father does not have appropriate housing for Child; due to Father's unstable living conditions and lack of plan progress, Father cannot meet Child's physical or emotional needs; Father has minimal connection with Child; Child is not bonded to Father; Child is bonded to J.F., an adoptive resource; Child is thriving in J.F.'s care; and Child would not suffer irreparable harm if Father's parental rights were terminated). We instruct the parties to attach a copy of Judge Tereshko's decision in the event of further proceedings in the matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/18

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
IN THE COURT OF COMMON PLEAS

IN THE INTEREST OF:      : FAMILY COURT DIVISION
                         : JUVENILE BRANCH-DEPENDENCY
                         :
                         :
E.J.M.E-F., a Minor      : CP-51-AP-0000226-2018/CP-51-DP-0002580-2016
                         :
                         :
APPEAL OF:               :
S.E., Father             : Superior Court No. 1811 EDA 2018

## OPINION

S.C.E., ("Father"), appeals from the Decree and Order entered by this Court on May 30, 2018, granting the Petition to Involuntarily Terminate his Parental Rights of his Child: ("E.J.M,E-F."), a male, born July    , 2016, filed by the Department of Human Services ("DHS"), on March 22, 2018, and served on all parties.   DHS also filed a Petition to Involuntarily Terminate the Parental Rights of Mother, T.S.G., on 3/22/2018. Mother agreed to sign Voluntary Relinquishment of Parental Rights paperwork, and a goal change hearing as to Mother is scheduled on July 18, 2018.

In response to the Decree of Involuntary Termination of Parental Rights issued on May 30, 2018, Father filed a *Notice of Appeal with Statement of Matters Complained of Upon Appeal* on June 13, 2018.

### STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In his Concise Statement of Matters Complained of on Appeal Pursuant to PA.R.A.P. 1925(b), Father alleges:

> 1. The Trial Court erred and/or abused its discretion by entering an order on 5/30/2018 involuntarily terminating the parental rights of Father. More

1

specifically, the trial court abused its discretion as substantial, sufficient and credible evidence was presented at the time of trial which would have substantiated denying the Petition for Goal Change Termination. The City has failed to meet its burden for termination by clear and convincing evidence under 23 Pa.C.S.A. §2511 (a)(1), and (2 because Father presented evidence that he had substantially met his FSP goals and thereby remedied his situation.

2. The Trial Court erred and/or abused its discretion by terminating the parental rights of Father pursuant to 23 Pa.C.S.A. §2511 (b) where DHS failed to prove by clear and convincing evidence that involuntarily terminating his parental rights best served the emotional needs and welfare of his Child.

3. The Trial Court erred or abused its discretion when it terminated Father's rights and changed the Child's goal to adoption.

## PROCEDURAL HISTORY:

T.S.G., is the "Mother" of E.J.M.E-F. (Exhibit "B", Certificate of Birth, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018).

S.C.E., is the "Father" of E.J.M.E-F. (Exhibit "B", Certificate of Birth, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018).

On July 22, 2016, the Department of Human Services (DHS) received a General Protective Services (GPS) Report alleging that the Child was born prematurely at 32 weeks gestation via a Caesarian-section delivery at Temple University Hospital (TUH) on 7 ⸝ /2016; that the Child weighed four pounds and three ounces at delivery; that the Child's APGAR scores were 5,7, and 9; that the Child's Mother, T.S.G., tested positive for benzodiazepines and opiates at delivery; that the Child tested positive for benzodiazepines at his delivery; that the Child would be in the Neonatal Intensive Care Unit (NICU) and monitored closely; that Mother also tested positive for benzodiazepines,

2

cocaine and opiates during her prenatal visits; that Mother had two prenatal visits at an unknown location; that Mother claimed that she was prescribed Percocet due to having a cyst and a kidney bladder infection; that Mother was unable to produce the prescription for the Percocet; that Mother admitted using benzodiazepines she had received from a friend; that Mother denied using cocaine even though she had tested positive for it; that Mother admitted using synthetic marijuana (K2); that Mother was not in a drug and alcohol program; that Mother had five other Children; and that Mother had a mental health history with a past diagnosis of bipolar disorder. The Report further alleged that Mother appeared to be bonding with the Child; that the Child was in an incubator and Mother was visiting and talking to the Child, but was not allowed to hold him; and that Mother had reported not being prepared for the Child. This Report was substantiated. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "c").

On August 16, 2016, the Child was discharged from TUH to the physical custody of a family friend, J ___ F. ., through a verbal agreement with Mother. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "d").

On August 16, 2016, DHS visited the home of Ms. F. ., and she was prepared for the Child. The home was appropriate and all necessary background checks were completed. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "e").

On September 16, 2016, DHS visited the home of Ms. F. : ., where the Child was safe, had necessary supplies, and the home was appropriate. (Exhibit "A" Statement

3

of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "f").

On September 22, 2016, the Community Umbrella Agency (CUA) had an Initial Single Case Plan (SCP) Meeting. The parental objectives established for Mother and Father were: 1) maintain attendance at WEDGE; and 2) ensure the Child's needs were being met. Both parents attended and participated in the Meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "g").

On October 7, 2016, the Honorable Margaret Murphy entered an Interim Custody Order, upon Motion of Master James Welkie, who found compelling circumstances at a hearing held on October 6, 2016. Caretaker J    F    shall have primary physical and sole legal custody of the Child, E    E    -F    , born 7/  /2016. Mother shall have supervised physical custody at such times as she and caretaker agree, in the caretaker's residence. Father shall have supervised physical custody at such times as he and caretaker agree, in the caretaker's residence. Mother and Father are ordered to undergo forthwith drug testing. Caretaker, J    F    Complaint for Custody filed 8/02/2016 is scheduled for hearing on 4/25/2017. (Custody Order, 10/07/2016, Case #0C0804211, CCP-Philadelphia County-Family Court Division).

On October 21, 2016, DHS visited the home of Ms. F    . The Child was safe, had necessary supplies and the home was appropriate. Ms. F    requested Kinship Care services. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "i").

4

An Adjudicatory Hearing was held on November 30, 2016, before the Juvenile Court Hearing Officer, James M. Rodgers. The Court ordered legal custody of the Child to remain with DHS, and placement to remain in Foster Care-Kinship. Kinship referral for J.F. Parents to have supervised visits at the Agency which may be modified by agreement. Mother referred to CEU forthwith for drug/alcohol screen, assessment, monitoring, dual diagnosis, 3 random drug screens prior to next court date. (Order of Adjudication and Disposition—Child Dependent, 11/30/2016).

A Permanency Review Hearing was held on February 23, 2017, before the Juvenile Court Hearing Officer, Carol A. Carson. Legal Custody of the Child to remain with DHS, and placement continues in Foster Care (Kinship). Mother and Father to have supervised visits with the Child twice weekly at the Agency. Mother referred to the CEU unit for a forthwith drug screen, 3 random screens, and monitoring. Father referred for Family School. Child is safe as of 2/17/2017. (Permanency Review Order, 2/23/2017).

On March 10, 2017, CUA held a revised SCP Meeting. The parental objectives established for Mother and Father remained the same. Neither parent attended or participated in the meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "l").

On March 15, 2017, the Honorable Doris A. Pechkurow ordered that the Interim Custody Order entered on 10/07/2016 shall remain. Neither party appeared for hearing scheduled. (Custody Order, 3/15/2017, Case #0C0804211, CCP-Philadelphia County-Family Court Division).

A Permanency Review Hearing was held on May 18, 2017, before the Juvenile Court Hearing Officer, Carol A. Carson. The Court ordered legal custody of the Child to

5

remain with DHS, and placement continues in Foster Care (Kinship). Child had Ages and Stages evaluation, and is medically up-to-date, and developmentally on target. Mother attends WEDGE-IOP, however, is not engaged with NET, (Northeast Treatment) nor any mental health treatment. Father has appropriate housing. Father to attend Family School, and he is referred to CEU forthwith for full drug and alcohol screen, if positive, Father to have assessment and 3 random screens prior to next court date. Child is safe as of 5/16/2017. (Permanency Review Order, 5/18/2017).

On August 9, 2017, a progress report was received from Family Support Services on behalf of Father, pertaining to his compliance with Family School. Father has made minimal compliance, having attended only one out of 3 days in July 2017 and has not attended any days in August 2017. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "n").

On October 4, 2017, a CEU report was received for Mother. She tested positive for Benzodiazepines. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "o").

On October 4, 2017, a closing letter was received from the Family School regarding Father. Father was discharged for non-compliance and lack of participation. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "p").

A Permanency Review Hearing was held on October 19, 2017, before the Juvenile Court Hearing Officer, Carol A. Carson. The Court ordered legal custody of the Child to remain with DHS, and placement continues in Foster Care (Kinship) through NET. Child doing well, attends daycare. Parents have weekly supervised visits with

6

Child at Agency, separately. Both Mother and Father have been minimally compliant with permanency plan. Parents referred to ARC for housing. Father to be referred for parenting. Parents to comply with all SCP objectives and recommendations. Child is safe as of 10/08/2017. (Permanency Review Order, 10/19/2017).

On January 10, 2018, CUA held a revised SCP meeting. The parental objectives for Mother and Father remained the same. Neither parents participated nor attended the meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 3/22/2018, ¶ "r").

A Permanency Review Hearing was held on January 17, 2018, before the Honorable Allan L. Tereshko. The Court ordered legal custody of the Child to remain with DHS, and placement continues in Foster Care (Kinship) through NET. Parents have weekly supervised visits with Child at Agency for 2 hours. Father to re-engage in Parenting or Family School. Child is safe as of 1/09/2018. (Permanency Review Order, 1/17/2018).

A Permanency Review Hearing was held on April 11, 2018, before the Honorable Allan L. Tereshko. The Court ordered legal custody of the Child to remain with DHS, and placement continues in Foster Care (Kinship) through NET. Remain as committed and placed. Mother is to sign voluntary relinquishments within 10 days. Child is safe as of 3/15/2018. (Permanency Review Order, 4/11/2018).

## TERMINATION HEARING

This Court held a contested termination hearing on May 30, 2018, before the Honorable Allan L. Tereshko. Father was present at the hearing, and represented by counsel, Karen Deana Williams, Esquire. (N.T., 5/30/2018, p.3 at 14-16; p.16 at 19).

7

Bridget Warner, attorney for DHS, presented the first witness, Jasmine Segarra, CUA Case Manager, NET. She testified the family became known to DHS in July 2016, when DHS received a GPS Report stating the Child was born testing positive for benzo and opiates, as was the Mother. After the Child was discharged from the hospital, he was placed in J⸻ F⸻r's home, the Kinship Foster Parent as a result of a verbal agreement between Mother and Ms. F⸻. The Child was adjudicated Dependent on 11/30/2016, and remained in Foster Care (Kinship) with Ms. F⸻. Ms. Segarra became the Case Manager in December 2017. (N.T., 5/30/2018, p.8 at 19-20; p.9 at 1-9; p.10 at 1-3).

Ms. Segarra testified that one of Father's objectives in the FSP was attending visitation with his Child, and Father only missed one visit since 2018 began. She has observed the visits between them and noted the Child has no problem in separating from Father at the end of the visit. Another FSP objective for Father was to attend Family School, which he did not successfully complete and he has not completed any Parenting courses. (N.T., 5/30/2018, p.16 at 6-25; p.17 at 1-25).

Further, she testified, Father does not have safe and appropriate housing for reunification with his Child, although she has given him referrals for housing. He currently participates in ARC services, particularly attending parenting networking which began on 3/14/2018. However, he has not successfully completed that program to this date. Ms. Segarra testified Father is not employed and has not provided verification of income, however, Father stated he receives disability income. (N.T., 5/30/2018, p.18 at 1-25; p.19 at 1-12).

8

Ms. Segarra testified that the Child is not bonded to either Mother or Father and the Child's connection to the parents is minimal. The Child may recognize Father, however, there is no parental bond. The Child is bonded to the Foster Mother, and whenever Ms. F.      walks away, the Child cries, and she is the only one that can calm him down when he has an outburst or tantrum. Ms. Segarra opined that the Child would not suffer irreparable harm if both Mother and Father's rights were terminated. Further, she believes it is in the Child's best interest to be adopted. (N.T., 5/30/2018, p.14 at 22-25; p.15 at 1-22).

On cross-examination by Karen Williams, Esquire, counsel for Father, Ms. Segarra noted that Father has been consistent with visitation and that the quality of the visits between Father and the Child was good. It seemed to her that Father was capable of redirecting the Child, used appropriate language and would bring the Child food during the visits. The Child is 22 months old and is minimally verbal. Ms. Segarra once again confirmed that Father is currently attending parenting class at ARC. Lastly, she noted that Father must fix a lot of things in his home to make it appropriate for the Child. There is no hot water, the steps lack a railing, and she believes an entire new house would probably be better suited. (N.T., 5/30/2018, p.20 at 16-25; p.21 at 1-25; p.22 at 1-25; p.23 at 1-25; p.24 at 1-9).

Father was the next witness to testify, and stated it was his case worker's fault that he was dismissed from Family School. He claimed Ms. Segarra never referred him to Family School, and that's why he did not attend. Then he was re-referred to ARC. Father also testified the house where he lives has been repaired, stating the banister has been repaired. He continues to have plumbing issues, however, he cannot afford to fix it

9

yet because all he has is social security and that is not enough. Father also admitted there is still a hole in the ceiling that he has not repaired. (N.T., 5/30/2018, p.26 at 17-25; p.27 at 1-25; p.28 at 1-25; p.29 at 1-25; p.30 at 1-6).

Father noted that he receives social security disability for chronic back pains and arthritis. He also noted he may be able to work 20 hours per week, however, he cannot get a job because of his weight problems and he hopes to lose some weight soon. (N.T., 5/30/2018, p.30 at 7-25; p.31 at 1-8).

## STANDARD OF REVIEW AND LEGAL ANALYSIS

When reviewing an appeal from a decree terminating parental rights, an appellate Court is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, an appellate court must accord the hearing judge's decision the same deference that it would give to a jury verdict. The Pennsylvania Superior Court need only agree with a trial court's decision as to any one subsection under 23 P.C.S.A. §2511 (a) in order to affirm a termination of parental rights. *In re D.A.T.* 91 A.3d 197 Pa.Super.2014).

The standard of review in termination of parental rights cases requires appellate Courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest

10

unreasonableness, partiality, prejudice, bias, or ill-will. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. In re T.S.M., 620 Pa. 602, 71 A.3d 251, 267 (2013) (citations and quotation marks omitted). In re Adoption of C.D.R., 2015 PA Super 54, 111 A.3d 1212, 1215 (2015).

Involuntary termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. As the party petitioning for termination of parental rights, DHS "must prove the statutory criteria for that termination by at least clear and convincing evidence." *In re T.R.*, 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203-04 (Pa.1989).

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super.2007)

11

(citations omitted). In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

This Child came to the attention of DHS when a General Protective Services (GPS) Report was received alleging that the Child was born prematurely at 32 weeks gestation via a Caesarian-section delivery at Temple University Hospital (TUH) on 7/ ./2016; that the Child weighed four pounds and three ounces at delivery; that the Child's APGAR scores were 5,7, and 9; that the Child's Mother, T.S.G., tested positive for benzodiazepines and opiates at delivery; that the Child tested positive for benzodiazepines at his delivery. The Child was in the neonatal intensive care unit (NICU) until August 16, 2016, when he was discharged from TUH to the physical custody of a family friend, J .: .F .

On October 7, 2016, the Honorable Margaret Murphy entered an Interim Custody Order, upon Motion of Master James Welkie, who found compelling circumstances at a hearing held on 10/06/2016. Caretaker J .. .. _ F· shall have primary physical and sole legal custody of the Child, E. .. E' · · .-F. , born 7/ ./2016. Mother shall have supervised physical custody at such times as she and caretaker agree, in the caretaker's residence. Father shall have supervised physical custody at such times as he and caretaker agree, in the caretaker's residence. Mother and Father are ordered to undergo forthwith drug testing.

12

An Adjudicatory Hearing was held on November 30, 2016, before the Juvenile Court Hearing Officer, James M. Rodgers. The Court ordered legal custody of the Child remain with DHS, and placement to remain in foster care-Kinship with Ms. F⸺.

**The Trial Court Properly Found that DHS had met its Burden by Clear and Convincing Evidence to Terminate Father's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), and (2)** [1]

The focus of termination proceedings is on the conduct of the parent. To satisfy 23 Pa.C.S.A. §2511 (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months period prior to the filing of the petition, which reveals a settled purpose of relinquishing parental claim to a child or a failure to perform parental duties. *In Re: C.S., 761 A.2d 1197, 1201 (Pa.Super.2000).* 23 Pa.C.S.A. §2511 (a)(2) focuses on the Child and his/her present and future need for

---

[1] 1(a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition is filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

13

essential parental care, control or subsistence necessary for his/her physical or mental well-being. *In Re: C.A.W., 683 A.2d 911 (Pa.Super 1996)*

In his *Concise Statement of Matters Complained of on Appeal*, Father alleges the Court erred and abused its discretion by involuntarily terminating his parental rights because substantial, sufficient and credible evidence was presented at trial which would have substantiated denying the petition for termination. This Court disagrees with Father's allegations.

This Court found clear, convincing and credible evidence that Father failed and refused to perform parental duties, failed to address the conditions which brought the Child into placement, and lacks the capacity to adequately provide care and control and a stable environment necessary for this twenty-two month old Child.

This Court relied on the credible testimony of Jasmine Segarra, CUA Case Manager, at NET. She testified the Child came into DHS care at birth in July 2016, when he was released from the hospital's Neo-Natal Intensive Care Unit, after treatment for the presence of benzodiazepines in his system. He went directly into the home of the Caretaker, Ms. F    ...

Ms. Segarra testified credibly and convincingly regarding the Single Case Plan (SCP) objectives for the parents, which were: 1) maintain attendance at WEDGE; and 2) ensure the Child's needs were being met. Father only missed one visit since 2018 began. She has observed the visits between them and noted the Child has no problem in separating from Father at the end of the visit. Another FSP objective for Father was to attend Family School, which he did not successfully complete and he has not completed any parenting courses. Further, she testified, Father does not have safe and appropriate

14

housing for reunification with his Child, although she has given him referrals for housing. He currently participates in ARC services, particularly attending parenting networking which began on 3/14/2018. However, he has not successfully completed that program to this date. She noted Father is not employed and has not provided verification of income.

This Court relied on credible, clear and convincing evidence from Ms. Segarra regarding Father's failure to perform parental duties, and inability to remedy the conditions which led to the Child's removal and placement. This Court is not persuaded that Father can or will remedy the conditions which brought the Child into court supervision. Nor is the Court persuaded that Father will be able to fulfill his parental responsibilities for this Child in the future. The reality is Father is not in a position to take care of this Child. Father does not have appropriate housing, and has not completed the objectives necessary to give him the tools to provide for the Child's present and future need for essential parental care, and control that is necessary for this Child's physical and mental well-being. Based on the evidence presented, this Court found clear and convincing evidence to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §2511(a) (1) and (2).

**Trial Court Properly Found that Termination of Father's Parental Rights was in the Child's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).[2]**

---

[2] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

15

After the Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the children pursuant to 2511(b) In re Adoption of C.L.G., 956 A2d 999 (Pa.Super 2008). In terminating the rights of a parent, the Court "shall give primary consideration to the development, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. In re T.S.M., 71 A3d 251 (Pa. 2013).

Father alleges in his Concise Statement of the Matters Complained of on Appeal that this Court erred and/or abused its discretion by terminating Father's parental rights pursuant to 23 Pa.C.S.A. §2511(b) where DHS failed to prove by clear and convincing evidence that involuntary termination of Father's parental rights served the emotional needs and welfare of the child. This Court disagrees with Father's allegation.

This Court found the Case Manager, Ms. Segarra, provided credible, persuasive testimony regarding the Child's physical and emotional needs and best interests. She opined that it would be in the Child's best interest to be adopted because she had concerns regarding Father's unstable living situation and lack of progress with his FSP objectives. She testified the extent of Father's connection to the Child is minimal, and the Child is not bonded to the Father. The Child is, however, bonded to his Foster Parent, Ms. F    She has observed the Child with his Foster Parent and notes that the Child is very attached to her, and whenever she walks away, he cries. He calls her "Mom" and she seems to be the only one that can calm him down when he has his outburst or tantrums. She opined the Child would not suffer irreparable harm if Father's parental

16

rights were terminated, and it would be in his best interest to be adopted. The Child has been in Ms. F▯▯'s care since his birth and the Child is now twenty-two months old. Therefore, this Court found that credible, clear and convincing testimony was provided that the Child would not suffer irreparable harm if Father's rights were terminated and that termination of Father's parental rights and adoption would be in the Child's best interest.

This Court also finds Father's testimony not credible in many aspects. Father blamed the Case Manager and the Agency for him not attending and completing his FSP objectives. He has not obtained suitable housing, nor has he provided credible information that he can support the Child. Father has not formed a parental relationship with the Child and this Court does not anticipate Father will remedy the situation that brought the Child into care in the near future. This Court finds that Father is not ready, willing nor able to parent this Child, and finds his testimony not credible.

## Trial Court DID NOT proceed with a Goal Change pursuant to 42 Pa.C.S.A. §6351 (f.1) (2).[3]

The concept of a "goal change" is consistent with the statute which requires the trial court, at the conclusion of a permanency hearing in a child dependency proceeding, to order the continuation, modification, or termination of placement or other disposition which is best suited to the safety, protection and physical, mental, and moral welfare of the child; an order to continue, modify, or terminate the current placement, as required by

---

[3] 42 Pa.C.S.A. §6351-Disposition of dependent Child.—(f.1). Additional determinations. Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following: (2) If and when the Child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the Child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the Child.

the statute, is synonymous with a decision to continue or change the permanency plan goal. 42 Pa.C.S.A. § 6351(g)

Finally, Father alleges the trial court erred or abused its discretion when it terminated Father's rights and changed the Child's goal to adoption. This Court disagrees with Father's allegation. The Permanency Review Order, dated 5/30/2018, reflects the current placement goal for the Child is "return to parent or guardian." This Court stated at the conclusion of the trial, "I'm not able to move the goal to adoption today because of our deference to Mother's request to sign voluntary relinquishments." A contested goal change hearing is scheduled before this Court on 7/18/2018.

## CONCLUSION

At the conclusion of the Hearing, the Court stated:

The record is clear here that Father failed to remedy any of the issues that brought this Child into care, has failed to put himself in a position to parent this child, notwithstanding his attempt to blame all of his failures on the system and the case workers, the record does not support that.

And besides that, the law does not require the agency to reach out to you every time you fail to take steps and every time you have a failure to complete a program. It's your obligation to reach out and reschedule. And if there is any conflict between the testimony of the case worker and the father's testimony, the issue of credibility is resolved in favor of the case worker. And the law is that the child should not have to wait until you accomplish any of the goals that you set forth, let's put it this way, any of the goals that you've identified.

The Child should not have to wait until you put yourself into a position to parent. The Child should not have to wait until you obtain an appropriate living space for the Child. The only thing that you're doing appropriately is visiting the Child, but the testimony is that the Child views you as another person. There is no evidence to support finding that you have a parental relationship

18

with this Child. The real parental relationship exists with the caretaker who's been caring for this Child since birth.

Considering this, and the record as a whole, Father's rights are terminated pursuant to 2511 (a)(1) and (2). The other sections under 2511 (a) are not appropriate because the Child was never in Father's care. Further, under 2511 (b), it is in the best interest of the Child that the Child be established with the family that the Child is with now. That a permanent relationship be allowed to blossom with this family who has cared for the Child since birth and that the Child is entitled to a permanent lasting relationship with the caretaker. It would be in the best interest of the Child to be adopted and there will be no irreparable harm if Father's parental rights are terminated pursuant to 2511 (a)(1) and (2), and pursuant to 2511 (b).

I am not able to move the goal to adoption today because of our deference to Mother's request to sign voluntary relinquishments. (N.T, 5/30/2018, p.36 at 13-25; p.37 at 1-25; p.38 at 1-15).

For the foregoing reasons, this Court respectfully requests that the Decree and Order of May 30, 2018, terminating Father, S.C.E.'s Parental Rights to the Child, E.J.M.E.-F., be AFFIRMED.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

July 18, 2018
DATE

19

## CERTIFCATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing OPINION has been served upon the following parties by the manner as designated:

**Family Court Delivery Mail Box**

Lisa Marie Visco, Esq.
206 N. 22nd Street, Unit B
Philadelphia, PA 19103
Counsel for Appellant, Father, S.E.

Daniel Silver, Esq.
80 Windy Knoll Dr.
Richboro, PA 18954-1409
GAL

Michael J. Graves, Jr., Esq.
1700 Market St., Ste. 1005
Philadelphia, PA 19107
Counsel for E.J.M.E.-F., Child

Bridget M. Warner, Esq.
City of Phila Law Dept.
1515 Arch Street, 16th flr
Philadelphia, PA 19102
Counsel for DHS

Mary A. Galeota, Esq.
1515 Arch Street, Ste. 1200
Philadelphia, PA 19102
Counsel for Mother, T.G.

_____
**ALLAN L. TERESHKO, Sr. J.**

July 18 2019
DATE